Martin J. Bienenstock
Irena M. Goldstein
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

*Attorneys for The Royal Bank of
Scotland N.V. (Formerly Known as
ABN AMRO Bank N.V.)*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re:<br><br>LEHMAN BROTHERS INC.,<br><br>            Debtor. | 11 Civ. 05709 (NRB)<br><br>Bankr. Case No. 08-01420 (JMP)<br>SIPA |
| THE ROYAL BANK OF SCOTLAND N.V.,<br><br>            Movant,<br><br>            v.<br><br>JAMES W. GIDDENS, AS TRUSTEE FOR SIPA LIQUIDATION OF LEHMAN BROTHERS INC.,<br><br>            Respondent. | |

**REPLY MEMORANDUM IN SUPPORT OF THE ROYAL BANK
OF SCOTLAND N.V.'S MOTION FOR ORDER WITHDRAWING
<u>REFERENCE PURSUANT TO 28 U.S.C. § 157(d)</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF ARGUMENT ................................................................................................1

ARGUMENT ....................................................................................................................6

I.      The LBI Trustee's Argument that 28 U.S.C. § 157(d) Does Not Apply to SIPA
        Proceedings is Plainly Incorrect.................................................................................6

II.     The District Court Should Withdraw the Reference Pursuant to 28 U.S.C.
        § 157(d)...........................................................................................................................7

        A.      The Bankruptcy Court Lacks Constitutional Authority to Determine the
                Motion to Compel...........................................................................................7

                (1)     The Motion to Compel is Not a Core Proceeding to Enforce the
                        Automatic Stay.......................................................................................7

                (2)     The Motion to Compel is Not Core Under 28 U.S.C. §§
                        157(b)(2)(A) and (O) ............................................................................8

                (3)     The Motion to Compel is Not Core Under 28 U.S.C. §
                        157(b)(2)(B) ...........................................................................................9

        B.      The Secondary Factors the District Court is Required to Consider Under
                *Orion* Weigh in RBS N.V.'s Favor.......................................................................11

        C.      Judge Koeltl's Decision in *Mich. State Housing Dev. Auth. v. Lehman
                Bros. Holdings Inc.* is Wholly Distinguishable from the Instant Proceeding........11

CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*1800 Postcards, Inc. v. Morel,*
   153 F. Supp. 2d 359 (S.D.N.Y. 2001)..................................................................................11

*Am-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.,*
   33 F. Supp. 2d 235 (S.D.N.Y. 1998)....................................................................................3

*In re Apex Exp. Corp.,*
   190 F.3d 624 (4th Cir. 1999) ................................................................................................9

*Arctrade Liquidation Trust v. Greenwich Ins. Co. (In re Actrade Fin. Techs., Ltd.),*
   No. 02-16212, 2010 WL 3386945 (Bankr. S.D.N.Y. Aug. 23, 2010)....................................10

*Barton v. Sec. Inv. Prot. Corp.,*
   185 B.R. 701 (D. N.J. 1994) .................................................................................................7

*Ben Cooper, Inc. v. Ins. Co. of State of Penn. (In re Ben Cooper, Inc.),*
   896 F.2d 1394 (2d Cir. 1990)...............................................................................................9

*Brodene v. Biltmore Secs., Inc.,*
   No. 96-cv-0572, 1998 WL 214766 (W.D.N.Y. Apr. 22, 1998)..............................................3

*In re Bucchino,*
   439 B.R. 761 (Bankr. D. N.M. 2010) ....................................................................................3

*In re Cassidy Land and Cattle Co., Inc.,*
   836 F.2d 1130 (8th Cir. 1988) ..............................................................................................9

*Citizens Bank of Maryland v. Strumpf*
   516 U.S. 16 (1995).................................................................................................................3

*DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.),*
   435 B.R. 220 (Bankr. D. Del. 2010) ....................................................................................10

*Drexel Burnham Lambert, Inc. v. Mancino,*
   951 F.2d 348 (6th Cir. 1991) ................................................................................................3

*Granfinanciera v. Nordberg,*
   492 U.S. 33 (1989).......................................................................................................5, 8, 11

*Klos v. Polskie Linie Lotnicze,*
   133 F.3d 164 (2d Cir. 1997)................................................................................................13

*Knapp v. Seligson (In re Ira Haupt & Co.)*,
    361 F.2d 164 (2d Cir. 1966)........................................................................................13

*N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.)*,
    No. 00-cv-40563, 2000 WL 1514614 (S.D.N.Y. Oct. 12, 2000)...............................9

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982).................................................................................................6, 7

*In re Nemko, Inc.*,
    143 B.R. 980 (Bankr. E.D.N.Y. 1992)........................................................................3

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993)...........................................................................6, 10, 11

*Pervel Indus., Inc. v. T M Wallcovering, Inc.*,
    871 F.2d 7 (2d Cir. 1989) ...........................................................................................3

*Peterson v. Beale*,
    No. 92-cv-5412, 1995 WL 479425 (S.D.N.Y. Aug. 11, 1995)...................................3

*Complete Mgmt., Inc. v. Arthur Andersen LLP (In re Complete Mgmt., Inc.)*,
    No. 02-cv-1736, 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002) (NRB) ............2, 9

*In re Ruiz*,
    440 B.R. 197 (Bankr. D. Utah 2010) ..........................................................................3

*Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*,
    387 B.R. 95 (Bankr. D. Del. 2008) .............................................................................9

*In re Sheeran*,
    369 B.R. 910 (Bankr. E.D. Va. 2007).........................................................................3

*Shirl v. Drexel Burnham Lambert, Inc.*,
    No. 88-cv-866, 1989 WL 90159 (D. Minn. May 24, 1989) ......................................3

*Stedor Enterps., Ltd. v. Armtex*,
    947 F.2d 727 (4th Cir. 1991) ......................................................................................3

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011)..................................................................................... *passim*

*Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*,
    154 B.R. 581 (D. Utah 1993).....................................................................................10

*Swedbank AB v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*,
    445 B.R. 130 (S.D.N.Y. 2011)................................................................................2, 7

*The VWE Group, Inc. v. Amlicke (In re The VWE Group, Inc.)*,
    359 B.R. 441 (S.D.N.Y. 2007)........................................................................11

**STATUTES**

11 U.S.C. § 362(a) ............................................................................................8

11 U.S.C. § 542 ................................................................................................8

11 U.S.C. § 542(a) ...........................................................................................7

11 U.S.C. § 542(b) ...........................................................................................8

11 U.S.C. § 546(a)(1) .......................................................................................3

11 U.S.C. § 553 ................................................................................................4

15 U.S.C. § 78eee(b)(4) ....................................................................................6

28 U.S.C. § 157(b) .......................................................................................6, 10

28 U.S.C. § 157(b)(2)(A) ..............................................................................5, 8

28 U.S.C. § 157(b)(2)(B) .............................................................................9, 10

28 U.S.C. § 157(b)(2)(C) .......................................................................6, 10, 11

28 U.S.C. § 157(b)(2)(O) ..................................................................................8

28 U.S.C. § 157(c)(1) ......................................................................................13

28 U.S.C. § 157(d) ...............................................................................1, 5, 6, 7

28 U.S.C. § 157(e) ..........................................................................................11

N.Y. U.C.C. § 9-312(b)(3) ................................................................................7

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7001(1) ...............................................................................13

17 C.F.R. § 240.10b-10......................................................................................2

RBS N.V. respectfully submits this reply memorandum in support of its Motion to Withdraw the Reference and in response to the LBI Trustee's memorandum in opposition to the Motion to Withdraw the Reference, filed September 14, 2011 [Docket No. 7] (the "Opposition").[1]

### SUMMARY OF ARGUMENT

Resolution of Two Bankruptcy Code Issues Does Not Dispose of the LBI Trustee's Contract Action for Money Damages under English and New York Law.  The Opposition nowhere challenges RBS N.V.'s fundamental legal proposition that the Bankruptcy Court cannot constitutionally exercise the essential attributes of judicial power to determine a state law counterclaim for money damages against RBS N.V.  Instead, under the guise of enforcing the automatic stay, the LBI Trustee strains to retro-morph his counterclaim into a proceeding fully resolved if one of RBS N.V.'s contract rights is rendered unenforceable under bankruptcy law. He fails.  As the District Court can verify and as outlined below, the LBI Trustee is still bringing a contract claim based on disputed facts and disputed applications of English and New York law. The LBI Trustee's failure to mention the issues does not make them vanish.   And further, there is no basis for severing one bankruptcy issue from a single claim, especially when the issue's resolution does not render the other issues moot.  Finally, the LBI Trustee's stay enforcement claim depends on his first prevailing on his contract claim, and his motion only requests contract damages.  Thus, the stay enforcement claim is window dressing only.  Moreover, even if the LBI Trustee prevails on his contract claim, there is no stay violation for failing to pay contract damages.  No matter what magic dust the LBI Trustee sprinkles to conceal the money damages

---

[1] Capitalized terms used but not defined in this reply memorandum have the meanings set forth in RBS N.V.'s motion to withdraw the reference of the Motion to Compel pursuant to 28 U.S.C. § 157(d), filed August 16, 2011 [Docket No. 1] (the "Motion to Withdraw the Reference").

claim he propounds under non-bankruptcy law, the reference of the claim must still be withdrawn.

This Case is Not *Swedbank*,[2] but Rather, *Complete Mgmt., Inc. v. Arthur Andersen LLP (In re Complete Mgmt., Inc.)*, No. 02-cv-1736, 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002) (NRB) ("*CMI*").  *CMI* was ahead of its time and in accord with *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Exactly as in *CMI*, the reference should be withdrawn because the LBI Trustee's contract claim has little or no relation to bankruptcy law, arose pre-SIPA, would exist absent the SIPA proceeding, is generally resolved by district courts, and will involve extensive discovery, expert testimony on English law, and a jury trial.

The LBI Trustee's Claims.  Without further ado, let's look at the LBI Trustee's claims, as set forth in his own Motion to Compel.  Paragraphs 1 through 33 assert his contract claim under a swap agreement governed by English law.  Paragraphs 34 through 38 and 47 through 50 assert that the Bankruptcy Code renders unenforceable RBS N.V.'s contractual setoff right under Section 13 of the Terms of Agreement.  Paragraphs 39 through 46 assert that RBS N.V.'s contract rights set forth in the Terms of Agreement are invalid under New York law and cannot coexist with the swap agreement.  Paragraphs 51 through 55 assert a stay violation claim for failure to pay the amount claimed in the prior paragraphs.  His "Conclusion" requests contract damages, but no stay violation damages.

The Disputes.  Now, let's look at the issues in dispute.  While the LBI Trustee contends the Terms of Agreement is invalid, RBS N.V. contends it was delivered to LBI over 800 times pursuant to Securities Exchange Act Rule 10b-10, LBI never objected, and all transactions under

---

[2] In *Swedbank AB v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 445 B.R. 130 (S.D.N.Y. 2011), the bank set off funds that LBHI deposited into an account postpetition to satisfy a prepetition claim.  Thus, the bank grabbed LBHI's property and the setoff was a stay violation.  Here, LBI has no bank account at RBS N.V. No post-SIPA property is at issue.  There is no prepetition-postpetition mutuality issue.

the swap agreement are subject to them.[3]   The LBI Trustee contends the Terms of Agreement is

an unenforceable amendment and/or material alteration of the swap agreement under New York

law.  Motion to Compel at ¶¶41-46.   RBS N.V. counters that the Terms of Agreement is valid

under both English law, which governs the swap agreement, and New York law, which governs

the Terms of Agreement.    No bankruptcy law is implicated.  The Terms of Agreement provides

RBS N.V. two independent rights that each eliminates any amount otherwise owing to LBI:

> (i)     Section 14 provides RBS N.V. a security interest in all funds RBS N.V. holds to
> secure all amounts LBI or its affiliates owe RBS N.V. or its affiliates.  The LBI
> Trustee admitted RBS N.V. holds over $53 million as collateral, Motion to
> Compel at ¶28, and then contended that the approximately $345 million RBS
> N.V. allegedly owed LBI was LBI's property.[4]    Opposition at 12-13.
> Significantly, the two-year statute of limitations in section 546(a)(1) of the
> Bankruptcy Code during which the LBI Trustee may attempt to avoid the security
> interests granted by Section 14 has lapsed, even after giving effect to a tolling
> agreement that terminated.    Therefore, even without the safe harbors in the
> Bankruptcy Code, the security interest cannot be challenged.

---

[3] Based on the Second Circuit's decision in *Pervel Indus., Inc. v. T M Wallcovering, Inc.*, 871 F.2d 7, 8 (2d Cir.
1989) that the repeated delivery of confirmations could render such confirmations enforceable under the prior course
of dealing doctrine, the circuit courts of appeal are in accord.  *See, e.g.*, *Drexel Burnham Lambert, Inc. v. Mancino*,
951 F.2d 348, at *2 (6th Cir. 1991) ("*Pervel* 'has consistently been enforced in the context of transactions between
securities brokers/dealers and their customers'"); *Stedor Enterps., Ltd. v. Armtex*, 947 F.2d 727, 733 (4th Cir. 1991)
(citing *Pervel*, 871 F.2d at 8) (upholding terms of confirmations delivered to a broker dealer customer, even though
the customer did not read or sign the confirmations); *Brodene v. Biltmore Secs., Inc.*, No. 96-cv-0572, 1998 WL
214766, at *6 (W.D.N.Y. Apr. 22, 1998); *Peterson v. Beale*, No. 92-cv-5412, 1995 WL 479425, at *10 (S.D.N.Y.
1995); *Shirl v. Drexel Burnham Lambert, Inc.*, No. 88-cv-866, 1989 WL 90159, at *6 (D. Minn. May 24, 1989).

[4] The Supreme Court, in *Citizens Bank of Maryland v. Strumpf*, and numerous other courts have long recognized that
just because a debtor's interest in a contract is estate property does not mean funds held by the contract counterparty
are also estate property.  *See* 516 U.S. 16, 21 (1995) (holding that a bank account "consists of nothing more or less
than a promise to pay, from the bank to the depositor … and [the bank's] temporary refusal to pay was neither a
taking of possession of [the debtor's] property nor an exercising of control over it, but merely a refusal to perform its
promise"); *In re Bucchino*, 439 B.R. 761, 768 n.8 (Bankr. D. N.M. 2010) ("technically, the property of the estate at
issue is not the funds held in the bank account, but instead the contractual interest in obtaining the funds"); *In re
Ruiz*, 440 B.R. 197, 201 (Bankr. D. Utah 2010); *In re Sheeran*, 369 B.R. 910, 922 (Bankr. E.D. Va. 2007).  Further,
the cases the LBI Trustee relies on in arguing the LBI estate includes funds allegedly owed by RBS N.V., *In re
Nemko, Inc.*, 143 B.R. 980 (Bankr. E.D.N.Y. 1992) and *Am-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.*, 33 F.
Supp. 2d 235 (S.D.N.Y. 1998), prove the opposite.  Indeed, the *Nemko* and *Am-Haul* courts both ruled the funds in
question were subject to conflicting claims, including setoffs.  In *Nemko*, the funds deemed property of the estate
had been placed in a custodial account, awaiting the bankruptcy court's determination of the proper recipient of the
funds, and the court reduced the amount subject to turnover by the amount of conflicting claims against it.  143 B.R.
at 985, 989.  In *Am-Haul*, not only had the court found that funds held by a surety were property of the estate, it
held that the funds were subject to the surety's setoff rights against the estate and invited the surety to enforce its
setoff claim.  33 F. Supp. 2d at 252.  Moreover, *Nemko* pre-dated *Citizens Bank* and is what *Am-Haul* relied on.

(ii)     Section 13 allows RBS N.V. to set off against amounts LBI claims from RBS N.V. all amounts LBI or its affiliates owe RBS N.V. or its affiliates.  The LBI Trustee contends this section is avoidable under bankruptcy law but fails to mention that he admitted in his Opposition that he received a termination notice from RBS N.V. four days prior to commencement of LBI's SIPA proceeding.  *See* Motion to Compel at ¶15.  Therefore, RBS N.V.'s setoff rights under Section 13 ripened before LBI's SIPA case commenced and are not subject to avoidance under the Bankruptcy Code.  The time to commence an action to avoid pre-SIPA setoff rights expired long ago.  RBS N.V. also contends the Bankruptcy Code's safe harbors prevent the LBI Trustee from avoiding its contractual setoff rights.

Finally, the LBI Trustee alleges RBS N.V. admitted it owes LBI approximately $347 million in its Section 6(d)(i) Statement, and therefore only bankruptcy issues remain to be determined.   Let's take a look.  The Section 6(d)(i) Statement, attached to the Goldstein Declaration as Exhibit A-2, provides, in relevant part: "subject to our right of set-off specified below, the amount otherwise payable by us to you … is USD $347,501,344."  Then, in the section headed "Set-off," RBS N.V. advises LBI of its setoff rights and security interests.  What RBS N.V. admitted was that it owed before and that it owes nothing after taking into account its contractual security interests and/or setoff rights.

The LBI Trustee's Opposition Makes the Required Outcome Here Crystal Clear.  On pages 1-3 of his Opposition, the LBI Trustee asserts that his whole case boils down to a summary judgment motion where he requests rulings that RBS N.V.'s setoff runs afoul of section 553's mutuality requirement and  that the safe harbor doesn't save the setoff, and voilà, there is no state law claim to be decided.  Let's see if his ploy works.  For argument's sake, let's assume the LBI Trustee obtains summary judgment that RBS N.V.'s setoff is non-mutual and is not permitted under the safe harbor provisions and that RBS N.V.'s pre-SIPA termination notice does not matter.  Those rulings do not entitle the LBI Trustee to judgment.  RBS N.V. still has its security interests under Section 14 of the Terms of Agreement.  The remaining disputes raised to date by the LBI Trustee in his Motion to Compel, but ignored in his Opposition, are his claims that the

Terms of Agreement is invalid under non-bankruptcy law and that the pre-SIPA termination is ineffective.  Therefore, under any scenario, there remain English and New York law and pure contract issues to be resolved before the LBI Trustee can prevail. Thus, not only is the LBI Trustee wrong that his summary judgment motion ends the matter, he is urging a needless bifurcation of the issues between two courts, without citing any authority that the District Court can withdraw his contract claim, but leave behind one of his contract arguments.

       <u>This Proceeding is the Opposite of *Michigan State Housing Authority*</u>.  In Judge Koeltl's recent decision, he denied reference withdrawal of a matter involving no disputed facts and solely disputed bankruptcy law issues, where the claimant also wanted the District Court to withdraw its claims against the debtor's estate, which were undoubtedly determinable by an Article I Bankruptcy Court.

       <u>The LBI Trustee Alleges Reference Withdrawal is Not Even Possible</u>.  The LBI Trustee also contends that 28 U.S.C. § 157(d) does not apply to SIPA proceedings.  The jurisprudence below and in the Motion to Withdraw the Reference shows the LBI Trustee is wrong, as he must be given that under his argument the District Court would be powerless to determine any issues, even when the Bankruptcy Court is unable to do so due to lack of Article III status.

       <u>The LBI Trustee's State Law Claim Cannot be Camouflaged by Bankruptcy Rhetoric</u>. As an alternative, the LBI Trustee argues that the Motion to Compel is core under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate), (B) (allowance or disallowance of claims), and (O) (other proceedings affecting the adjustment of the debtor-creditor relationship). The LBI Trustee, however, misses the point made by *CMI* and by the Supreme Court in *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) and *Stern v. Marshall*.  The latter two decisions involved disputes Congress labeled as core.  In both cases, the Supreme Court held Article I courts could not constitutionally determine them because they required Article III judicial power.

Moreover, contract actions by a debtor against a third party were determined to require Article III judicial power in *N. Pipeline Const. Co. v. Marathon Pipe Line Co*., 458 U.S. 50, 71-72 (1982).  The Motion to Compel is core under 28 U.S.C. § 157(b)(2)(C) because RBS N.V. filed a Proof of Claim against LBI (for unpaid underwriting fees) and the Motion to Compel (seeking payment of amounts allegedly due under a swap agreement) is a counterclaim.  *Stern v. Marshall*, 131 S. Ct. at 2620, however, holds that the Bankruptcy Court lacks constitutional authority to exercise the judicial power required to determine the counterclaim when resolution of the proof of claim does not resolve the counterclaim, even though 28 U.S.C. § 157(b)(2)(C) defines a counterclaim to a proof of claim as core.  In this case, resolution of RBS N.V.'s Proof of Claim has no impact on the instant contract dispute.  Further, on September 23, 2011, RBS N.V. filed a response to the Motion to Compel that includes a jury demand and statement that RBS N.V. does not consent to entry of orders and judgments by the Bankruptcy Court, which is attached to the First Supplemental Declaration of Irena M. Goldstein, filed contemporaneously herewith, as <u>Exhibit A</u> [Bankr. Ct. Docket No. 4575] (the "<u>Response</u>").  Now that RBS N.V. filed the Response, the secondary factors from *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) weigh even more heavily in favor of withdrawing the reference.

## **ARGUMENT**

### I.    **The LBI Trustee's Argument that 28 U.S.C. § 157(d) Does Not Apply to SIPA Proceedings is Plainly Incorrect**

The LBI Trustee argues the District Court cannot withdraw the reference of the Motion to Compel because the LBI proceeding was "removed" to the Bankruptcy Court pursuant to 15 U.S.C. § 78eee(b)(4) and not "referred" to the Bankruptcy Court pursuant to 28 U.S.C. § 157(b) and District Court Standing Order M-61.  Common sense dictates, however, that when the

Bankruptcy Court cannot constitutionally determine a dispute, the matter must go to a court that can!  The LBI Trustee's argument would leave it permanently undetermined.  The jurisprudence consistently rejects the LBI Trustee's position.  *See* Motion to Withdraw the Reference at 17 (citing cases); *Barton v. Sec. Inv. Prot. Corp.*, 185 B.R. 701, 703 (D. N.J. 1994).  Ignoring precedent, the LBI Trustee cites two recent decisions, as though such decisions were ones of first impression, in the Madoff SIPA proceeding where the reference was withdrawn.  Then, the LBI Trustee contends those decisions are "clearly distinguishable" because they involved mandatory reference withdrawal without explaining why the distinction matters.[5]

## II.   The District Court Should Withdraw the Reference Pursuant to 28 U.S.C. § 157(d)

### A.   The Bankruptcy Court Lacks Constitutional Authority to Determine the Motion to Compel

#### (1)   The Motion to Compel is Not a Core Proceeding to Enforce the Automatic Stay

In the Summary of Argument, we demonstrated the LBI Trustee's stay enforcement claim cannot be determined before the contract claim is determined, is not supported by any provision of the Bankruptcy Code, and is completely different than *Swedbank*.  The Supreme Court would not have ruled that an estate's contract claims required an Article III court, as it did in *Northern Pipeline*, 458 U.S. at 71, if the failure to pay the amount the estate contended was owed under a prepetition contract somehow converted the action into a core stay enforcement proceeding not requiring an Article III court.[6]  Moreover, if failure to pay amounts owed under a

---

[5] *See* Opposition at 23 n.7 (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, No. 11-cv-0913, 2011 WL 2119720 (S.D.N.Y. May 23, 2011) and *Picard v. HSBC Bank PLC*, 450 B.R. 406 (S.D.N.Y. Apr. 25, 2011)).

[6] In addition, the LBI Trustee's argument ignores Section 14 of the Terms of Agreement, which grants RBS N.V. a security interest in the disputed funds which has been perfected by RBS N.V.'s possession of the same under N.Y. U.C.C. § 9-312(b)(3).  Accordingly, RBS N.V. could not have violated the automatic stay because it was not required to turn over the disputed amount on account of it being encumbered by a perfected security interest.  *See* 11

contract were a stay violation, section 542(b) of the Bankruptcy Code, which requires entities to pay undisputed amounts to the estate, would have been at least referred to, if not incorporated in, section 362(a) of the Bankruptcy Code.  The LBI Trustee has not cited section 542 in his Motion to Compel or Opposition, perhaps for good reason, as numerous courts have held that the failure, even without good cause, to pay a debt to an estate does not constitute a stay violation.  *See* Response at ¶74 n.9 (citing cases).  The LBI Trustee's response to the foregoing is to argue that the Bankruptcy Court can rule on the Motion to Compel without addressing whether the Terms of Agreement is enforceable.[7]  *See* Opposition at 15-16.  As explained in the Summary of Argument, however, even if the LBI Trustee prevails on the summary judgment motion he posits, he cannot win judgment against RBS N.V. before the Terms of Agreement is litigated under English and New York law and under such terms RBS N.V. prevails.

> (2)  The Motion to Compel is Not Core Under 28 U.S.C. §§ 157(b)(2)(A) and (O)

The LBI Trustee also argues his Motion to Compel is core under 28 U.S.C. §§ 157(b)(2)(A) and (O), the so-called "catchall" provisions.  This is wrong for two reasons.  First, the Supreme Court held in *Northern Pipeline*, *Granfinanciera*, and *Stern v. Marshall* that

---

U.S.C. § 542(a) (providing that entities in control of estate property need not turn over such property if it "is of inconsequential value or benefit to the estate").

[7] In fact, the LBI Trustee is so confident in his argument that he requests contradictory relief from the District Court: (i) to deny the Motion to Withdraw the Reference and (ii) to enter summary judgment.  In this regard, the LBI Trustee argues that "[t]here are no issues of fact or of state (or English) law."  *See* Opposition at 12.  This is plainly untrue, as is clear from RBS N.V.'s Response and the Motion to Compel itself.  The LBI Trustee disputes RBS N.V.'s position that the Terms of Agreement is enforceable against LBI as a matter of New York law.  *See* Motion to Compel at ¶¶39-46.  The LBI Trustee also disputes RBS N.V.'s position that the Terms of Agreement is not an amendment to the LBI-RBS N.V. ISDA Agreement, within the meaning of Section 9(b) of such agreement, as the LBI Trustee has argued, *see* Motion to Compel at ¶¶41-42, but rather, a separate agreement which the parties were permitted to enter into under English law governing the ISDA Agreement.  Further, the LBI Trustee disputes that September 15, 2008 is the Early Termination Date under the LBI-RBS N.V. ISDA Agreement, *see* Opposition at 7 (defining September 22, 2008 as the Early Termination Date), despite the fact that the LBI Trustee admitted RBS N.V. sent a termination notice to LBI on September 15, 2008 and the plain terms of the Section 6(d)(i) Statement, which explicitly provides that September 15, 2008 is the Early Termination Date.

defining things as core does not jettison application of Article III judicial power to estate claims against third parties for money damages.  Second, *CMI* "categorically" rejects this argument, 2002 WL 31163878, at *3, and other courts likewise held that interpreting the catchall provisions as encompassing every dispute in a case would eviscerate *Northern Pipeline*.[8]

### (3)    The Motion to Compel is Not Core Under 28 U.S.C. § 157(b)(2)(B)

In addition, the LBI Trustee argues the Motion to Compel falls within 28 U.S.C. § 157(b)(2)(B) for two reasons.  First, the LBI Trustee argues that the outcome of this dispute will determine whether RBS N.V. will realize a distribution in respect of its Proof of Claim or whether the Proof of Claim will be netted against the amount otherwise payable under the swap agreement.  Notably, the same was true in *CMI* and *Stern v. Marshall*, and neither court tolerated this argument.  Whether RBS N.V. will realize a distribution or utilize the Proof of Claim for purposes of setoff has no impact on whether its claim is allowed or disallowed for purposes of 28 U.S.C. § 157(b)(2)(B), particularly since the LBI Trustee already conceded the Proof of Claim should be allowed.[9]   The test the Supreme Court laid out in *Stern v. Marshall* is whether resolution of objections to the proof of claim will resolve all the factual and legal bases in the counterclaim.  131 S. Ct. at 2620.  The LBI Trustee does not and cannot contend it will.

Second, the LBI Trustee, relying on *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.)*, No. 00-cv-40563, 2000 WL 1514614, at *2 (S.D.N.Y. Oct. 12, 2000), argues the assertion of setoff rights by RBS N.V.

---

[8] *See, e.g.*, *In re Apex Exp. Corp.*, 190 F.3d 624, 631 (4th Cir. 1999); *Ben Cooper, Inc. v. Ins. Co. of State of Penn. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1400 (2d Cir. 1990); *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132 (8th Cir. 1988); *Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 103-04 (Bankr. D. Del. 2008).

[9] *See* Motion to Compel at ¶1 n.1 (arguing that in the event the LBI Trustee succeeds on the merits of its contract dispute, the amount otherwise payable by RBS N.V. under the LBI-RBS N.V. ISDA Agreement should be reduced by the amount of the Proof of Claim).

constitutes a "claim" and thus renders the Motion to Compel core under 28 U.S.C. § 157(b)(2)(B). RBS N.V. has not raised its contractual setoff right, however, to obtain funds from the estate. It is well accepted that the assertion of setoff as a defense does not render a proceeding core under 28 U.S.C. § 157(b)(2)(B).[10] Indeed, the opposite would undermine common sense. Contract claims routinely involve netting one set of charges against other charges. The LBI Trustee's argument would circumvent *Northern Pipeline* every time the contract damages involved netting two amounts.

The only definition of core that the Motion to Compel fits into is 28 U.S.C. § 157(b)(2)(C) (counterclaims by the estate against persons filing claims). The Supreme Court held in *Stern v. Marshall*, however, that notwithstanding 28 U.S.C. § 157(b)(2)(C), bankruptcy courts lack constitutional authority to exercise the essential attributes of judicial power in respect of state law counterclaims not resolved in the process of ruling on a creditor's proof of claim. 131 S. Ct. at 2620. Since the Proof of Claim has nothing to do with the Motion to Compel (the same as in *Stern v. Marshall*), the fact that the Motion to Compel is defined as core does not render constitutional the Bankruptcy Court's determination of it. This compels reference withdrawal and is consistent with *Orion*.[11]

---

[10] *See, e.g.*, *Arctrade Liquidation Trust v. Greenwich Ins. Co. (In re Actrade Fin. Techs., Ltd.)*, No. 02-16212, 2010 WL 3386945, at *5 (Bankr. S.D.N.Y. Aug. 23, 2010) ("when a setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction"); *DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 231 (Bankr. D. Del. 2010) ("Defenses to an action are distinct from counterclaims. A counterclaim sets forth an independent right to payment; whereas a defense is merely a response to a claim"); *Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*, 154 B.R. 581, 589 (D. Utah 1993) (setoff defense did not constitute a claim against the estate where creditor only sought to reduce or extinguish the estate's claim against it).

[11] The LBI Trustee argues that RBS N.V. does not fall within the scope of *Stern v. Marshall* as the Motion to Compel "is not a state law counterclaim but is instead based purely on bankruptcy law and is … a core proceeding under clauses (A), (B), and (O) of 28 U.S.C. §§ 157(b)(2)." *See* Opposition at 30. We answer this in the Summary of Argument. The LBI Trustee also argues that under *Stern v. Marshall*, RBS N.V.'s filing of the Proof of Claim constitutes submission to the Bankruptcy Court's equitable jurisdiction. *See* Opposition at 31. This argument stunningly overlooks the fact that the non-debtor in *Stern v. Marshall* filed a proof of claim and the Supreme Court

**B.     The Secondary Factors the District Court Considers Under *Orion* Weigh in RBS N.V.'s Favor**

RBS N.V.'s Response includes a jury demand and a statement that RBS N.V. does not consent to entry of orders and judgments by the Bankruptcy Court.  Thus, the additional *Orion* factors weigh heavily in favor of withdrawing the reference.[12]  *See* Motion to Withdraw the Reference at 25-33.  The LBI Trustee argues no jury trial is necessary as "there are no factual issues for a jury to decide."  This is plainly incorrect.  Are we to assume the LBI Trustee agrees that LBI failed to contest or agreed to the Terms of Agreement and, as a result, the Terms of Agreement is binding upon LBI?  Does the LBI Trustee agree that English law governing the swap agreement provides the Terms of Agreement can validly exist alongside the swap agreement the LBI Trustee is attempting to enforce?  Does he agree that the swap agreement was terminated as of September 15, 2008?  According to the Bankruptcy Court, there is also an issue of whether the Terms of Agreement is an adhesion contract.  That turns on the sophistication, representation, and bargaining power of each party.  *See* footnote 13.

**C.     Judge Koeltl's Decision in *Mich. State Housing Dev. Auth. v. Lehman Bros. Holdings Inc.* is Wholly Distinguishable from the Instant Proceeding**

The September 14, 2011 ruling of Judge Koeltl denying the request of the Michigan State Housing Development Authority (the "MSHDA") to withdraw the reference of (i) its adversary

---

debunked the old saw that filing a proof of claim was consent to Article I jurisdiction, ruling that subject to limited exceptions, "[c]reditors … have no choice but to file their claims in bankruptcy proceedings if they want to pursue the claims at all. That is why, as we recognized in *Granfinanciera*, the notion of 'consent' does not apply in bankruptcy proceedings as it might in other contexts." 131 S. Ct. at 2615 n.8.

[12] *See, e.g., Orion*, 4 F.3d at 1101 ("If a case is non-core and a jury demand has been filed … the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference"); *The VWE Group, Inc. v. Amlicke (In re The VWE Group, Inc.)*, 359 B.R. 441, 451 (S.D.N.Y. 2007) ("Under *Orion*, the court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference"); *1800 Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) (where defendants "have requested a jury trial and neither has consented to final resolution of the … matter by the Bankruptcy Court[,] [w]ithdrawal of the reference … would solve the constitutional problems that would arise were the adversary proceeding to proceed to trial").  Even though the Motion to Compel is technically core under 28 U.S.C. § 157(b)(2)(C), under 28 U.S.C. § 157(e) the Bankruptcy Court cannot hold a jury trial without RBS N.V.'s consent, which it expressly does not provide.

proceeding against Lehman Brothers Derivative Products Inc., LBHI, and LBSF (together, the "Lehman Parties") and (ii) the Lehman Parties' counterclaims against MSHDA is not remotely applicable to the instant proceeding in respect of the Motion to Compel.  There, MSHDA filed an adversary proceeding against the Lehman Parties asserting admittedly core claims.  MSHDA made no assertion its core claims required Article III judicial power.  The Lehman Parties filed counterclaims contending certain of MSHDA's contractual rights against the Lehman estates were unenforceable in bankruptcy.  MSHDA requested reference withdrawal of all claims and counterclaims in the adversary proceeding, *see* Hearing Tr. at 61:5-61:11, "so that it can make a motion for summary judgment specifically dealing with the applicability of the ipso facto provisions of the Bankruptcy Code and the safe harbor provision" because MSHDA was "plainly unhappy with the bankruptcy court's interpretation of the ipso facto and safe harbor provisions in the BNY case and seeks to avoid a decision by the bankruptcy court … here on the same basis." *See* Hearing Tr. at 61:15-61:18 and 65:3-65:7.

In contrast, (i) RBS N.V. is not requesting withdrawal of the reference of its claim against LBI, (ii) the LBI Trustee's counterclaim against RBS N.V. is unrelated to the Proof of Claim, (iii) the key issues involve disputed facts (*i.e.*, course of dealing, termination, and English law) not subject to summary judgment, but subject to jury trial, (iv) the LBI Trustee admits receiving a termination notice from RBS N.V. four days before LBI's SIPA proceeding commenced, and (v) the LBI Trustee's counterclaim challenges the entirety of the Terms of Agreement under New York law and some of the Terms of Agreement under bankruptcy law.

Notably, it was significant to Judge Koeltl that the Bankruptcy Court was deciding a summary judgment motion reviewable *de novo*.  *See* Hearing Tr. at 61:18-25.  Here, the key facts are disputed and the Bankruptcy Court's fact findings would be reviewed under the clearly erroneous rule if RBS N.V.'s jury trial and Article III rights are not sustained.  *Stern v. Marshall*

made clear that the Bankruptcy Court exercises "the essential attributes of judicial power" over counterclaims when it resolves them.  131 S. Ct. at 2618.[13]

The LBI Trustee has requested, in the event the District Court withdraws the reference, that it re-refer the Motion to Compel to the Bankruptcy Court so that it may make proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).  *See* Opposition at 4, 32.  Given that RBS N.V. has requested a jury trial, the LBI Trustee's request must be denied.

## CONCLUSION

RBS N.V. respectfully requests that the District Court enter an order withdrawing the reference of the Motion to Compel and grant RBS N.V. such other and further relief as is equitable and just.

Dated: October 3, 2011
       New York, New York

Respectfully Submitted,

/s/ Martin J. Bienenstock
Martin J. Bienenstock
Irena M. Goldstein
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

*Attorneys for The Royal Bank of Scotland N.V. (Formerly Known as ABN AMRO Bank N.V.)*

---

[13] At the hearing on RBS N.V.'s motion for an order requiring the LBI Trustee to proceed by complaint, as required by Bankruptcy Rule 7001(1), with no notice and briefing of the issue, the Bankruptcy Court volunteered it had looked at the Terms of Agreement and called it an "unsigned apparent adhesion contract created by RBS internally." *See* Hearing Tr. at 59:23-24 (Sept. 14, 2011), attached as Exhibit B to the Response.  The Motion to Compel does not even make that argument despite the fact that the LBI Trustee had over two years to consider the Terms of Agreement, and for good reason.  None of the elements of an adhesion contract apply to LBI.  *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164 (2d Cir. 1997) (citing *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 831 (S.D.N.Y. 1996)) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms").  The late Circuit Judge Friendly ruled: "The conduct of bankruptcy proceedings not only should be right but must seem right."  *Knapp v. Seligson (In re Ira Haupt & Co.)*, 361 F.2d 164, 168 (2d Cir. 1966).  Reference withdrawal would also further Judge Friendly's principle.

13